UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BAISTAR MECHANICAL, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Case No. 13-01325 (RJL) |
| CONTINENTAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION**

(May 22, 2014) [Dkt. #7]

FILED
MAY 22 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiff Baistar Mechanical, Inc. ("Baistar" or "plaintiff") filed this action against Continental Insurance Company ("Continental" or "defendant") in the Superior Court of the District of Columbia on July 15, 2013, seeking damages for breach of contract. *See* Compl. [Dkt. #1-1]. On September 9, 2013, Continental removed the case to this Court. *See* Not. of Removal [Dkt. #1]. Now before the Court is defendant's Motion for Summary Judgment. *See* Mot. Summ. J. [Dkt. #7]. Upon consideration of the parties' pleadings, the entire record in this case, and relevant law, the Court GRANTS defendant's Motions for Summary Judgment.

## BACKGROUND

This case involves a dispute arising out of a construction project at the Brazilian Embassy in Washington, D.C. (the "Project"). The Project involved renovations and refurbishing of the Chancery Building of the Brazilian Embassy. *See* Compl. at ¶ 9. On

1

November 5, 2005, the Federative Republic of Brazil hired Grunley Construction Company, Inc. ("Grunley"), pursuant to a prime contract (the "Prime Contract"), to act as the general contractor for the Project. *See id.* In connection with the Prime Contract, Grunley was required to obtain performance and payment bonds. *See id.* at ¶ 10. On November 11, 2008, defendant issued a payment bond (the "Bond"), as surety, on behalf of Grunley, as principal. *See id.* Paragraph 11 of the Bond contains limitations for when a suit may be filed pursuant to the Bond, specifically requiring that:

> No suit or action shall be commenced by a Claimant under this bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located or after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2.3, or (2) on which the last labor or service was performed by anyone or the last materials or equipment was furnished by anyone under the [Prime Contract], whichever of (1) or (2) first occurs.

Declaration of James Milos, Ex. A to Def.'s Mot. Summ. J. ("Def.'s Mot.") at ¶ 3 [Dkt. #7-2]; Payment Bond, Ex. A-1 to Def.'s Mot. at ¶ 11.

In early 2009, plaintiff entered into a subcontract (the "Subcontract") with Grunley to perform certain work on the Project. *See* Compl. at ¶ 11. By September 30, 2011, "Grunley completed performing the labor and services and furnishing the material and equipment required by the Prime Contract," when plaintiff completed equipment training at the Project site. *See* Declaration of Eric Snyder ("Snyder Decl.") at ¶ 4 [Dkt. #7-3].

2

As early as February 23, 2011, Baistar invoiced Grunley for a total amount of $2,991,801 for the work it performed pursuant to the Subcontract and approved change orders. *See* Compl. at ¶ 15. On August 31, 2012, Baistar, through counsel, submitted a claim to Continental pursuant to subparagraph 4.1 of the Bond. *See id.* at ¶ 22. On February 8, 2013, Baistar again demanded payment from Grunley for the work it performed on the Project. *See id.* at ¶ 21.

Baistar has been paid a total of $2,623,875.89 of the $2,991,801.00 owed to it for its performance on the Project. *See id.* at ¶¶ 15-16. On June 22, 2013, Baistar submitted revised cost documentation to Continental, demanding the remaining $367,925.11 it claims it is owed. *See id.* at ¶ 26. Neither Continental nor Grunley have paid Baistar any portion of the disputed amount. *See id.* at ¶ 27. On July 15, 2013, Baistar filed a one-count complaint against Continental, seeking to recover $367,925.11 against the Bond.

## STANDARD OF REVIEW

Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is proper where the pleadings, stipulations, affidavits, and admissions in a case show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must accept as true the evidence of, and draw "all justifiable inferences" in favor of, the party opposing summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

3

(1986). A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## ANALYSIS

This case requires a determination as to whether plaintff's action was timely filed, as a matter of law, under the contractual terms of the Bond.[1] Courts in this jurisdiction generally recognize the validity of contractual limitations periods like the one-year limitations period contained in the Bond. *See Vigilant Ins. Co. v. Am. Mech. Servs. of Md., LLC*, 816 F. Supp. 2d 114, 118-19 (D.D.C. 2011) ("Contractual provisions limiting the period within which insurance policy holders may validly initiate a lawsuit are generally enforceable under District of Columbia law.") (quoting *Nkpado v. Standard Fire Ins. Co.*, 697 F. Supp. 2d 94, 98 (D.D.C. 2010)); *see also General Ins. Co. of Am. v. Interstate Serv. Co., Inc.*, 701 A.2d 1213, 1221 (Md. Ct. Spec. App. 1997) (applying District of Columbia law and holding that subcontractor's claim was barred based on materially identical one-year limitation period contained in bond).

The plain language of the Bond precludes any suit brought more than one year after "the last labor or service was performed or the last materials or equipment was furnished," or more than one year after providing notice of a claim under the Bond to the

---

[1] Plaintiff argues that its claim should not be barred because it entered into a tolling agreement ("Tolling Agreement") with Grunley on December 21, 2011. *See* Pl.'s Opp'n at ¶¶ 12-13. The Tolling Agreement tolled all applicable statues of limitations between the parties and prevented Baistar from entering into any litigation with Grunley for a period of one year. *See id.* Unfortunately for the plaintiff, Continental was neither a party to, nor subject to the terms of the Tolling Agreement, and thus cannot be prevented from raising a timeliness defense to this suit.

defendant, whichever occurs first. *See* Payment Bond, Ex. A-1 to Def.'s Mot. at ¶ 11. Continental argues that the work under Prime Contract was completed no later than September 30, 2011. *See* Snyder Decl. at ¶ 4. Plaintiff, however, argues that its work on the Project did not conclude until October 2, 2012, when it provided "consulting on issues with the Heating, Ventilation, and Air Conditioning system that Grunley, and the Plaintiff, installed at the project location." Pl.'s Opp'n at ¶ 3.

The determinative question, therefore, is whether the work performed in October 2012 was done pursuant to the Prime Contract, or simply for warranty purposes. *See U.S. for Use and Benefit of Lank Woodwork Co., Inc. v. CSH Contractors, Inc.*, 452 F. Supp. 922, 924 (D.D.C. 1978) ("[t]he determinative question" is whether the work was "part of the original contract' or furnished merely for the purpose of correcting defects, or making repairs following inspection of the project.") (internal quotations and citation omitted.). On this point, the sworn declaration of Eric Snyder, a Project Manager at Grunley, is instructive. Indeed, Mr. Snyder stated that "Grunley completed performing the labor and services and furnishing the material and equipment *required by the Prime Contract* by September 30, 2011 when Baistar Mechanical, Inc. completed equipment training at the Project site." *See* Snyder Decl. at ¶ 4 (emphasis added). Because the remedial consulting Baistar provided in October 2012 was not done pursuant to the Prime Contract, I find that the work on the Prime Contract was completed no later than September 30, 2011.

Notice of plaintiff's claim, however, was not sent to the defendant until August 31, 2012. *See* Compl. at ¶ 22. Thus, because the completion of the performance was the first occurring event under Paragraph 11 of the Bond, Baistar was required to commence any action brought pursuant to the Bond within one year of September 30, 2011. Unfortunately for the plaintiff, it did not file this suit until nearly a full year after the expiration of the limitations period, and therefore its claim must be barred.

## CONCLUSION

For all the foregoing reasons, defendant's Motion for Summary Judgment is GRANTED. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge